Then we will hear this, the next argument will be in United States ex rel, whoever we have, versus American, versus AIG and STAR, etc. May it please the court, my name is Joseph Adragna. I appear today on behalf of the appellant, Mr. Palullo, who also appears on behalf of the United States government. We bring this action under the False Claim Act. Our pleadings in this action alleged both a false claim and a reverse false claim. The summons was dismissed and we are here seeking a de novo review of the facts and allegations set forth in our complaint. And we are requesting that this, in as much as we are the non-moving party, that the court take what we say or what we have said in our papers as completely true. And to infer anything that may be inferred from that which we have pled in our favor. We are of the belief that the dismissal of our complaint was by a court that misconstrued both the law and the facts. And we refer the court respectfully to our pleadings, which we believe on the face without discovery set forth viable causes of action. I would like to turn my attention to AIG's response to our pleadings. At one point they have indicated that our case fails because of the statute of limitations that is imposed in matters such as these. We disagree. We refer the court to the case of Wood versus Allergan and also to the Pogge court. Both actions, or in both actions, Pogge was a District of Columbia decision and Wood v. Allergan was a decision of this court. The statute in relation to the relater has been interpreted to be a ten year statute. The judge that dismissed this particular action indicated that she believed that it was a six year statute of limitations and that none of the causes of action set forth in our complaint complied with that six year statute of limitation. I think the courts have been well versed, although this particular court has not decided what in effect the statute of limitations is in. We believe that the decision in the matter of Wood versus Allergan is much more In addition to that, AIG has asserted a defense of public knowledge. It is claiming that those things that are set forth within our summons and complaint were previously set forth in either newspaper articles or other literature. To that we say that the statute in terms of public knowledge was amended in 2010 to remove it as a jurisdictional bar to a pleading. Therefore- Is it a bar to recovery? It's not a bar to recovery or pleading. It's certainly a consideration, but not a bar. In addition to that, my client was the first person to report what the criminal and or civil fraudulent activity was in this case. And even if the public knowledge bar continued to exist, which it does not, there are no articles, there are no references that would have indicated or that do indicate that Mel Harris and the CEO of AIG were in complicity under any circumstances. There are articles that indicate that Mr. Harris was a member of organized crime. And they go back decades. But there are no articles to be found anywhere that would indicate, even by a scintilla of evidence, that the CEO of AIG and Mel Harris, who was a well-known entity in organized crime, were affiliated with each other, much less that they were in a conspiracy to do that which is set forth in the complaint. And, of course, the complaint alleges that the CEO of AIG and Mel Harris, who was his wife's cousin, conspired to provide insurance to organized crime entities, and that they did it through organized crime brokerage houses and did it as well through Mel Harris, who was, again, a well-known figure in organized crime. Well, Judge Forrest principally found that there was insufficient allegations, that there was no specifics about any of that. And so where in the complaint is there a recitation as to who the organized crime figures were and what, when, and how they were doing the things that you allege generally in the complaint? Well, first of all, the complaint is replete with factual allegations of the scheme. And in saying this to you, I'm referring to Cortes that says a plaintiff's obligation, at least at the pleading stage, is to set forth the scheme by which these acts occurred. And we clearly set forth the scheme and the parties, as well as the beneficiaries of the schemes. And the beneficiary, without naming names, was organized crime. But if leading figures in organized crime is sufficient? Not just leading figures in organized crime. The Genovese and Gambino families are the parties who benefited by the insurance that was provided to organized crime entities, many of which had no substance. But who? Who are the sources for this? Who are the individuals that were involved in this? You don't say, right? We do say who the source is. My client was confined to prison, and in Allenwood he met with and listened to organized crime entities and figures who told him what the scheme was. In our reply brief, but not in our complaint, we set forth the names of the parties and what knowledge, in fact, was imparted to them while he was in this prison. Under the case of Novak v. Caracas, I don't know the citation, but we are not obligated to set forth at the pleading stage the names of the parties who provided confidential information to us. We did it anyway because AIG— In the reply brief. We did it in the reply brief, yes. Before the district court? Yes. In where? The district court in which this case was— Where was it before the district court? In what document? It was in the reply brief. To the motion in the district court? Yes. Yes, we set forth the names of the criminal entities that had provided the information to us, and we connected it to the information that was provided. As far as the names of the entities for which insurance was written, we asked this court to respectfully understand that my client is in prison when he is learning this information. He does not have the ability to enter into any kind of discovery at all. Right, but you cite Novak. That's a 2000 case that's pre-Iqbal and Twombly, and so you have some obligation to allege facts and to say, well, my guy was in prison. It doesn't sort of get you over the obligation to present facts, right? Well, we certainly can present facts. It goes without saying that the facts that we present will be augmented by the discovery if this court gives it to us. That's the problem that the Supreme Court, as several of us on this bench know from firsthand experience, was trying to address in Twombly where the Supreme Court articulated a plausibility standard. Well, in Corchis, which is the decision of this case, Corchis v. American Medical Response, Inc., the court goes out of its way in a case, not a similar factual case, but the court goes out of its way to say that the plaintiff has a duty to tell the court through its complaint what the scheme is. And we believe that we have done that very clearly. We can only tell the names of the parties if that's within our knowledge. And at the time that this complaint was formulated, we didn't know the specific entities to which this insurance, as we allege faulty insurance due to improper underwriting, was given to. But that'll be an easy matter. All we have to do is request from AIG the names of the companies to which insurance was provided, and then we'll be able to give it to you chapter and verse, same is true of Mel Harris. We can give it to you. Could we have learned it from prison? Maybe, but we didn't. But we believe that we can give it in abundance with just the slightest bit of discovery, discovery and inspection. So, Corchis goes on to say that we have a very- Essentially what's happening then is you've got this person saying, well, I was in prison and I heard this stuff, right? I mean, that's how this starts out. No, there's more than that. My client, before he went to prison, worked for a fellow by the name of Posner. Posner was the owner of a fishback corporation. My client had personal interaction, day-to-day personal interaction, with Mel Harris. And during his interaction with Mel Harris in this fishback case, which is one of the instances that we cite where they disguised as an investment loss what they should have couched as an underwriting loss. They didn't allege it as an underwriting loss because that might have led the Securities Exchange Committee, as well as those who own blocks of stock, to investigate why underwriting losses. How do you have an underwriting loss? You're supposed to consider the assets of a corporation. But in any case, my client had personal day-to-day interaction with Mel Harris. And when my client had put together a conglomerate to purchase Fishback Corporation, Mel Harris came up to him and said, we're not going to let you do this unless you give Mr. Greenberg, who's the then CEO, $2 million cash, and you give me, Mel Harris, $75,000 a month association money. So this is not all just speculation. My client had personal dealings with these people. They tried to do what I just described to you. And in addition to that, it's not mere speculation. In 2004, the New York Attorney General sued both AIG, its CFO, Mr. Greenberg, and Mr. Smith, alleging that they had participated in a bid rigging scheme with the world's or the United States' largest insurance broker, and that senior AIG officials were receiving kickbacks as a result of the fix that was in. So what my client put forth in his summons and complaint wasn't just pie in the sky. It was supported by facts. We gave you individuals. We gave you facts. We gave you circumstances. The only thing we can't give you and that we didn't give you is the names of the entities to which this was supplied, but that's easily provided in the event we get just a minimal amount of discovery, and that's all we're asking for. Thank you. You've reserved three minutes for rebuttal, Mr. Drongo. Thank you very much. Ms. Pines. Good morning. May it please the Court, I'm Lori Pines, and I'm here on behalf of Defendant Appellee AIG. I'll note for the Court that some points also apply equally to the other appellees, and they'll be joining me on those issues, and then they'll also be appearing on their own behalf. Your Honors, the District Court properly dismissed this lawsuit as an entirely frivolous key tam action with no basis in law or fact, and nothing we have just heard from Appellant Palullo should alter that conclusion. The only claims left in this case are the False Claims Act claims for which there are numerous independent grounds for dismissal that compel affirmance of the District Court judgment. Appellant Palullo appears to exhibit a fundamental confusion about what the False Claims Act statute does. The False Claims Act statute is not an all-purpose misconduct statute, and it's not a private regulatory policing statute. A viable False Claims Act claim must meet specific statutory requirements, including a false claim or statement that's made in connection with obtaining or avoiding a government payment that was material to the government. Our brief sets forth that Palullo's complaint does not and can never meet these statutory requirements. We brief in detail that Palullo fails to sufficiently plead the factual basis for these mafia and fishback allegations that underlie the False Claims Act claims, but even putting that aside, accepting truth in any way there, these claims fail as a matter of law on a number of different grounds. And in the interest of time, I'm going to provide a few examples for the Court that focus on Counts 2 and 3, which are the counts that remain against AIG. First, there's a basic failure in Count 2, which is the absence of any payment obligation. Count 2 is a reverse false claim, Your Honors, which is based on the 2006 regulatory settlement. With a reverse false claim, there has to be an existing obligation and then a false claim to avoid or decrease that existing obligation. But a settlement is not a payment obligation, and that comes from the statute itself as well as the case law, and we brief that extensively on pages 27 to 28 of our brief, which makes Count 2 very easily not something that can stand. Another example of a major pleading failure is the materiality element that's missing, and I'll point to Count 3 as the best example there. Materiality, of course, has to be pled with Rule 9b particularity. But did Judge Forrest rule on those grounds? Yes. Judge Forrest said that, in essence, this Count 3 traditional false claim based on the bailout in 2008-2009 could not have been material to what was done because Palullo's actually asking the court to accept the idea that the government would have refused to bail AIG out, an action that Palullo admits was done to save the economy from potential collapse, Your Honor, if it had learned about these alleged misconduct. And there are no facts to support that theory. It's implausible, and what the district court said was that this is incredible and nothing more than conclusory and made a similar finding with respect to Count 2. Right, but it doesn't go off on materiality, or did I miss it? Well, it says in the analysis section of this opinion. That's true. I believe, I don't know if the word materiality was used as clearly as it should be, but by saying that these are incredible allegations and nothing more than conclusory, that to have said the bailout wouldn't have occurred had they known of these decades-old allegations is, I believe, a finding that there can be no materiality there, Your Honor. Another example that I'll give, and this is another one. Sorry, just before you get to your other example, Ms. Bynes, how would that issue have been pleaded in a way that was material? I think in order to have materiality there, you'd have to have something that said it would have mattered to the government, that therefore they wouldn't have done the bailout. We'd have to have some facts on that. Again, this is governed by the Rule 9b particularity requirement. There's no facts whatsoever to say, gee, had we known of these old, unrelated, alleged allegations about the mafia and this acquisition of Fishback, an electrical conductor that happened in 1991, then we wouldn't have done this bailout. It's not plausible, and there's certainly no facts to that effect. If it were pleaded, then the plaintiff or the relator would have had to have some at least close to intimate knowledge of what government decision-makers would have done? Would have had some evidence in that respect. In other words, this is supposed to be an insider. There could have been some internal documents that showed there was some intent. To remember here that in addition to materiality, there has to be a strong inference of fraudulent intent to obtain or avoid a government payment. That's certainly missing from the pleading. If the plaintiff were able to plead these facts with the requisite particularity, and in that sense he asks us to look at the reply brief that he submitted to Judge Forrest, but assuming he cleared that hurdle, why wouldn't we at the pleading stage assume that an entity such as AIG's funding of organized crime activities would be material to the government in deciding whether to bail it out? I would think that your argument rises or falls at the first step, not at the materiality step. What am I missing about your argument? Well, I believe the materiality, Your Honor, goes to the tremendous implausibility. There still has to be a plausible claim. Well, that's the first step, whether they've plausibly pleaded a fraud on the government. But if they plausibly pleaded a fraud that they were concealing from the government that they were involved in supporting organized crime, I don't know how you argue to us that's not material. Well, I think the big issue here is there is no evidence of intent to defraud. In other words, we're talking about completely separate interactions, and I understand if there was some showing at the time, and that mattered to the bailout payment. But there's simply no facts alleged in that regard in the complaint, and I believe counsel said that that was in the lower court, more details. I did not see it that way. They're in the reply brief on appeal. They were not before the lower court, so I don't think that's accurate. I don't think you can amend your pleadings in the context of a reply brief on appeal. That doesn't seem proper. Another issue here, perhaps that helps the court in other ways, and these are all independent grounds, is really the failure to allege any false statement made in connection with the receipt of the funds. At most, it's alleged that AIG had to attest to the accuracy of its financial statements through the time of the bailout, and that there was an omission, but there's nothing about how any statements that were made in order to obtain the bailout funds were rendered misleading by the omission of these implausible allegations. So that's another big problem, and I think the district court properly held there that Palullo fails to identify any specific false statement to secure a payment or to avoid an existing obligation. I'll also say that in the complaint, we see there's this insistence that the 2011-12 selldown of AIG stock could somehow be a false claims act claim, and there, again, the AIG neither obtained nor avoided any government payment in connection with that sale of stock. It was the government selling its stock to the public. I don't see how that could be any basis for a false claims act claim. We briefed extensively the time bar issue. You know, I believe that it doesn't matter here. We don't have to get to it. I could talk about why I think the six-year rule is better. I do acknowledge the cases go both ways, but the circuit courts have not adopted the POG decision or the allergen decision. They're not going to tie the knowledge of the relator to the government, and if you look at the statute 3731B, it's talking about a discovery rule that applies to the official of the United States. That's not the relator there. There's not a lot of analysis from Judge Forrest on this, right? There isn't. I agree with that, Your Honor. She did just say that it was the six years, but I do believe ---- She also then talks about the state's 10-year statute of limitations and simply states that none of the allegations occurred within that period. Yes, and I think, you know, that's very clear, particularly with respect to, say, count two, which involves the settlement, which occurred in February of 2016, and this ---- excuse me, February of 2006. This was filed in July of 2016. So even if you added 10 years, I think there's no issue that count two is time barred under any circumstance, under any reading. So I think we're just talking about count three as having any relevance to that. And we briefed extensively. I know the counsel just said the doctrine of public disclosure doesn't exist anymore. I think that's incorrect. It certainly does. The jurisdictional issue had nothing to do with whether we were going to still have the bar. And we've briefed that. I see that my time is running out, you know, in 46 through 48 of our brief. Thank you very much. Thank you. Thanks, Ms. Pines. Mr. Stahl. Good morning. Good morning, Your Honors, and may it please the Court, Ryan Stahl on behalf of the Starr Defendants. As Ms. Pines noted, we join in the arguments of our co-appellees. I just wanted to take a few brief moments with the Court to focus on some specific issues regarding the claims against the Starr Defendants. As an initial matter, the appeal before you as to the Starr Defendants is replete with basic waiver and forfeiture issues. In his opening brief, we're later challenged only two counts that are alleged against the Starr Defendants, that being counts four and five, and did so in a cursory three-page argument that fails to cite a single precedent. In his reply, Relator curiously does not even mention those counts four and five, let alone address any of the arguments set forth in Starr's appellee brief, setting forth the multiple bases supporting the dismissal by Judge Forrest in the district court. Judge Forrest doesn't spend a lot of time talking about counts four and five either. That's correct. That's correct, Your Honor, but all of the underlying findings by Judge Forrest support the issues before this court, and of course you can affirm on any basis in the record, and we set forth at length in our brief before this court the multiple bases, which I'll get to. Continuing with the waiver issue, Your Honor, and the forfeiture, in the reply brief, the only argument raised by Relator and for the first time as to the Starr Defendants is that count ten states a valid cause of action as to the Starr Defendants. This is done in two paragraphs without any developed argument before the court. Of course, the law of this circuit settled that issues not raised in the opening brief are deemed waived. The law has also settled that issues that are not sufficiently argued in the brief are considered raised and will not be addressed. Regardless, Your Honors, counts four, five, and ten suffer from numerous fundamental legal defects. This is not an issue of requisite particularity. As best that can be gathered, counts four and five, the legal theory that's being advanced, is that a failure to, quote, mention Relator's decades-old wholly unrelated mafia allegations in connection with the shareholder suits that were challenging the government's appropriation of a controlling interest in AIG during the 2008 bailout somehow constitute a False Claims Act claim because, quote, had these crimes come to light during the lawsuits, the government could have alleged this misconduct as counterclaims against Greenberg and Seiko. Relator, of course, does not cite any precedent for this strain theory, and it fails under any of the elements of the False Claims Act. First, there's no claim at issue under the False Claims Act. The alleged inability to bring an unrelated counterclaim in a lawsuit does not involve a claim for payment under the FCA. As an aside, there's no plausible counterclaim that could have been brought in those suits in any event. Second, there's no falsity. Relator does not identify any plausible false statement in connection with those lawsuits. Third, there's no materiality, certainly not under the demanding standards set by the Supreme Court and Universal Health Services, Inc. There's no relationship between these specious decades-old allegations and what was going on with respect to the lawsuits at issue. And, of course, they're also untimely. Mr. Greenberg and others left of the star defendants left AIG in 2005. This lawsuit was not brought until 2016, well past the statute of limitations, whether we're dealing with 10 years or 6 years. Finally, as to count 10, Your Honors, that fails on any number of bases. Administrative filings don't constitute a claim. It's also facially time-barred. I see I'm out of time. Unless the Court has any questions, we'll stand on our brief. Thank you, Mr. Stahl. Thank you, Your Honors. Mr. Colby. Good morning. Thank you. May it please the Court. Jason Colby on behalf of Mel Harris. The only count left against Mr. Harris is count 10. As counsel for the star defendants explained, the relator doesn't mention count 10 in his opening brief. That's sufficient under the precedence of this Court to find that he's failed to preserve the issue for purposes of appeal. But apart from that, all of AIG's arguments about why the relator fails to state a claim under the Federal False Claims Act apply equally to the New York FCA because, as the courts have recognized, the language is substantially identical of the two statutes, and the New York courts have applied the New York FCA according to the principles of federal law. But apart from those problems, there are problems unique to the claim against Mr. Harris. And let me summarize the relevant allegations. In the 1980s and 90s, Mr. Harris engaged allegedly in some bad conduct with AIG. Later, in 2005, the New York State Attorney General sued AIG. AIG settled the lawsuit in 2006 without disclosing the unrelated bad conduct from decades earlier. Now, Mr. Harris was not a party to the 2005 or 2006 proceedings with the Attorney General. He didn't allegedly have any involvement in those proceedings at all. And those proceedings had nothing to do with the alleged bad conduct from the 1980s and 90s based on the allegations in the complaint. And the relator himself admits that fact. He admitted it to the district court when he described the supposed bad conduct from the 1980s and 1990s as, quote, entirely different, unquote, from the subject matter of the 2005 Attorney General of the State of New York lawsuit. That's in the appendix at page 350. So there's no authority from any jurisdiction, state or federal, that would support FCA liability against Mr. Harris based on those allegations. And invoking the conspiracy provisions of the FCA to try to allege that Mr. Harris can be liable on the basis of failing to prevent AIG from committing a fraud on the government doesn't save the claim. Because the very last act that Mr. Harris allegedly took based on any well-plaid allegation in the complaint occurred in the year 1990 when he supposedly accepted a payment. But there's no allegation that at that time Mr. Harris clairvoyantly foresaw the future, knew that AIG would one day be sued by the State Attorney General, and preemptively intended for AIG to fulfill a conspiracy at that time by deceiving the State of New York. We'll rest on our papers unless the panel has any questions. Thank you, Mr. Colby. Thank you. Mr. O'Donnell. Thank you. In February of 2016, the state and federal governments settled what they claimed was due and owing them collectively in the amount of $6.5 billion. Council said there was an obligation that was settled and that's incorrect. The state and federal government claimed and assessed that AIG owed them $6.5 billion. That claim on both of their parts was settled for $1.6 billion at a savings of $4.9 billion to AIG. Now, in February of 2016, certain conditions, both post-settlement and pre-settlement, were contained within the agreement. Number one, AIG agreed to forego the statute of limitations as to both civil and criminal frauds that it had committed. AIG agreed to give an independent entity control of its books and records. AIG agreed that it would divulge all civil and criminal fraudulent conduct. And there were other conditions. On December 31st, 2016, which is one year later approximately, the independent assessor is in place. AIG does not reveal, not a scintilla of civil or criminal activity in our complaint. It omits a material criminal activity in which it's participating. And that criminal activity, as it turns out, is an accessory, makes AIG an accessory before the fact of criminal activity. Because they're aiding and abetting, and they're enabling these unsubstantiated, for lack of a better expression, eggshell corporations to enter into the stream of building commerce in the city of New York because they're giving them performance insurance they shouldn't have and all of the other insurances that are required by these large construction outfits. And they are giving them a launching pad upon which to practice their nefarious and illegal deeds. I can tell you about them, but I don't have to in the complaint. So- Thank you very much, Mr. O'Donnell. Thank you all. We'll reserve decision in this case.